UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **VICTORIA FULLER,** | Civil Action No.: |
| Plaintiff, | |
| -against- | **COMPLAINT** |
| **INTERVIEW, INC.; BRANT PUBLICATIONS, INC.**, as the owner of Interview, Inc.; **PETER BRANT**, individually and as the shareholder and owner of Brant Publications, Inc.; **SANDRA J. BRANT**, individually and as the shareholder and owner of Brant Publications, Inc.; and **DEBORAH BLASUCCI**, individually and as the Executive Vice President and Chief Financial Officer of Interview, Inc. and Brant Publications, Inc., | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff, Victoria Fuller, by her attorneys, Kaiser Saurborn & Mair, P.C., as and for her complaint against defendants, alleges as follows:

## THE PARTIES

1. Plaintiff, Victoria Fuller ("Fuller" or "plaintiff"), is a citizen of the State of New York, residing in, Kings County.

2. Defendant, Brant Publications, Inc. ("Brant" or "defendant"), is a corporation authorized to do business in New York State with its principal place of business located in New York County at 575 Broadway, 5th Fl., New York, New York 10012.

3. Defendant, Interview, Inc. ("Interview" or "defendant"), is a privately held company, wholly owned by shareholders Peter Brant ("Peter Brant" or "defendant") and Sandra J. Brant ("Sandra Brant" or "defendant") through intermediate corporations, including, but not limited to, Brant, and is located in the same business offices as Brant.

1

4. Defendant, Sandra Brant, is the publisher of Interview magazine, as well as the Chief Executive Officer and President of Brant.

5. Defendant, Peter Brant, is the Chairman of Brant.

6. Defendant, Deborah Blasucci ("Blasucci" or "defendant"), is currently serving as the Executive Vice President and Chief Financial Officer of Interview and Brant.

## JURISDICTION AND VENUE

7. Original jurisdiction of this Court is founded upon 28 U.S.C. §1331 and 1332 (a), *et. seq.*, in that this is a civil action wherein the matters in controversy arise under the laws of the United States, 29 U.S.C. § 2615.

8. This Court has personal jurisdiction over the defendants named in the complaint pursuant to 29 U.S.C. § 2617(a) because the defendants conduct business in this district and because an act proscribed by 29 U.S.C. § 2615 occurred within this district.

9. Venue in this Court is proper under 28 U.S.C. §§ 1391(b) and (c), and 29 U.S.C. § 2615, because the defendants conduct business in this district, and all the events or omissions giving rise to the violations of 29 U.S.C. § 2601 alleged in the complaint occurred in this district.

## SUMMARY OF CLAIMS

10. Plaintiff was diagnosed with acute gastroenteritis and requested reasonable accommodation of defendants to permit her to take sick leave to seek treatment. In response, defendants discriminated against plaintiff because of her medical leave, and retaliated against her for seeking reasonable accommodation of her disability by, among other things: (a) refusing to pay plaintiff's full compensation to which she is lawfully entitled; (b) engaging in an intentional campaign designed to undermine and sabotage plaintiff in carrying out her job responsibilities; (c) suborning plaintiff's authority and marginalizing her management role, in an effort to force her from her employment; and (d) ultimately terminating her employment.

11. Subsequent to plaintiff's return to work from her first medical leave, plaintiff requested further reasonable accommodation of defendants to permit her to take sick leave for surgery to treat previously diagnosed but untreated perineorrhaphy - a progressively debilitating medical condition. In response, defendants terminated plaintiff's employment because of her disability.

12. In this action, plaintiff seeks: (i) compensatory and statutory liquidated damages, along with statutory attorney's fees for defendants' willful violation of plaintiff's rights under the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601 *et. seq.*; and (ii) compensatory and punitive damages for defendants' willful violation of plaintiff's rights under the New York State Executive Law § 296, *et. seq.* and the New York City Administrative Code § 8-502(a), et. seq.

## FACTS COMMON TO ALL CLAIMS

### Fuller's Employment

13. Plaintiff commenced her employment at Interview on, or about, February 14, 1994, in the capacity of Fashion Advertising Manager. In, or about, April of 1994, plaintiff was promoted to the position of Fashion Director with added responsibilities for managing the majority of the client accounts in the fashion, accessories and jewelry sector of the market.

14. In, or about, March of 1996, plaintiff was promoted to the position of Interview's Advertising Director, reporting directly and exclusively to the magazine's President, CEO and Publisher, Sandra Brant. In this new position, plaintiff's scope of responsibilities was expanded to include direct supervision and management of the Sales, Promotion and Marketing Departments at Interview.

15. In, or about, April of 1998, plaintiff was promoted to the position of Interview's Associate Publisher, with an expansion of the corresponding responsibilities and managing authority, including, among other things, recruitment, training, direction and management of the sales staff and independent agents for the territories of the United States, Italy and France.

16. On, or about, August 15, 2002, Interview and plaintiff executed and made effective the employment agreement (the "Agreement"), memorializing in writing the terms and

3

conditions governing plaintiff's employment, including her duties and compensation, along with the specific obligations and responsibilities of each party to the other.

17. In, or about, February of 2004, plaintiff was promoted to the position of Interview's Vice President and Associate Publisher, with the corresponding expansion of responsibilities and managing authority.

18. During her tenure at Interview, plaintiff was directly and proximately responsible for the expansion of Interview's advertizing revenue nearly threefold by, among other things, developing new client accounts in the heretofore underdeveloped sectors of the market and substantially increasing revenue from certain key accounts that plaintiff was responsible for servicing personally.

19. At all relevant times, plaintiff performed her duties in an exemplary manner. No disciplinary actions for cause or other adverse employment actions had ever been taken by defendants against plaintiff prior to the unlawful actions taken by defendants in retaliation for the plaintiff's medical leaves, as more particularly set forth in this complaint.

20. At all relvant times, defendants had a responsibility to maintain a work environment free of unlawful discrimination and retaliation.

**Plaintiff's Medical Leaves and Defendants' Willful Violations of Plaintiff's Rights**

A. *Plaintiff's First Medical Leave*

21. On, or about, December 7, 2006, plaintiff suffered severe abdominal pains and left work in the early afternoon to seek urgent medical attention from her attending physician, Dr. Jerry Clements, M.D. ("Dr. Clements"). Upon completion of the examination, Dr. Clements diagnosed acute gastroenteritis as the principal cause of plaintiff's illness and instructed her not to return to work and to take an immediate one month medical leave. Plaintiff's health condition was to be reassessed at the end of that initial medical leave period. Later that same day, plaintiff phoned Interview's Director of Human Recourses, Ms. Marie Mascaro ("Mascaro" or "HR Director") to inform her of the required immediate medical leave and to request the necessary forms to apply for the Short-Term Disability ("STD") benefits.

22. At no time prior to the onset of plaintiff's illness did defendants post the required public notice explaining employees' rights to a medical leave pursuant to the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601 *et. seq.* ("FMLA"), or furnish other material informing plaintiff of her foregoing statutory rights.

23. On, or about, December 8, 2006, plaintiff's husband, Mr. Graham Fuller, received in person from Mascaro the STD benefits claim documents, to be prepared and submitted by plaintiff.

24. In, or about, afternoon of December 8, 2006, plaintiff contacted her executive assistant by phone and requested to have certain work files forwarded to plaintiff's home so that she could continue with her work. Fuller was informed that her assistant was instructed by the defendants not to comply with her requests. Plaintiff also attempted to remotely access work-related records on her office computer, only to find that such heretofore customary and regular course of business remote access had been summarily terminated by defendants, without any prior notice to plaintiff. By the end of the same day, plaintiff received a written communication from the HR Director, which stated, in part:

> "We will temporarily reassign staff to deal with clients and other related matters, [to] assure that all tasks are performed... Accordingly, you should not contact clients or staff during your period of disability leave. We need to avoid miscommunications and are concerned that our hard work would be counterproductive if you attempt to continue to perform tasks. ...I understand you requested certain files to be sent to you at home. In light of the above, we do not think it appropriate to send work to you at home. Since your assistant will be temporarily reassigned, and in order to avoid any confusion, please direct any questions or concerns to Debbie or me."

25. Actions taken by defendants to isolate plaintiff from all work related matters and to cut off all contact with her subordinates and clients was unprecedented and contrary to regular course of business practices throughout plaintiff's tenure at Interview.

26. On, or about, December 14, 2006, plaintiff submitted to the defendants completed STD benefits claim documents, receipt and sufficiency of which was duly acknowledged by defendants in writing.

27. On, or about, January 1, 2007, defendants, in violation of the terms governing plaintiff's employment, unilaterally and without prior notice ceased payment to plaintiff of heretofore earned, due and owing compensation.

28. On, or about, January 2, 2007, following the reexamination of plaintiff's medical condition, Dr. Clements instructed Fuller to remain on medical leave until February 1, 2007, subject to his further evaluation of plaintiff's health at the end of January, 2007.

29. On, or about, January 9, 2007, plaintiff submitted to defendants revised STD benefits claim documents, informing defendants of the change in the plaintiff's expected return to work date. Receipt and sufficiency of said revised STD benefits claim documents was duly acknowledged by defendants in writing.

30. On, or about, January 25, 2007, following the reexamination of plaintiff's health condition, Dr. Clements instructed Fuller to remain on medical leave until March 12, 2007, subject to his further evaluation of plaintiff's health in February, 2007. Corresponding certification by Dr. Clements was provided to defendants.

31. On, or about, February 8, 2007, following the reexamination of plaintiff's medical condition, Dr. Clements informed plaintiff that her health condition was improving and she would be able to resume normal work on March 2, 2007. Corresponding certification was provided by Dr. Clements on revised STD benefits claim documents, which were provided to defendants the following day, February, 9, 2007. Receipt and sufficiency of said revised STD benefits claim documents was duly acknowledged by defendants in writing.

32. On, or about, February 16, 2007, during a routine follow-up examination, Dr. Clements became concerned with another serious health condition of plaintiff, unrelated to the previously diagnosed gastroenteritis, and referred her for a consultation with a specialist, Dr. Christina Kwon, MD ("Dr. Kwon"). Following a series of tests, Dr. Kwon diagnosed plaintiff with perineorrhaphy - a progressively debilitating medical condition that necessitates surgical intervention. Despite Dr. Kwon's

concerns with the plaintiff's deteriorating medical condition, she was unable to schedule Fuller for surgery until May of 2007.

### B. Plaintiff's Return to Work After the First Medical Leave

33. Plaintiff's medical leave of absence ended on March 1, 2007 and she promptly returned to work at the defendants' place of business on the morning of March 2, 2007. However, plaintiff found that she was unable to gain entry to her office because the locks to her office door had been changed by defendants. Subsequently, plaintiff also found that access to her office computer had been blocked by defendants.

34. Upon her return to work, plaintiff found that during the period of her medical leave of absence, the long established business practices governing the day-to-day work of plaintiff's direct subordinates had been countermanded by defendants, thereby undermining and sabotaging plaintiff's authority and her ability to carry out her job responsibilities in accordance with the terms governing her employment.

35. On, or about, March 5, 2007, defendant Blasucci demanded that plaintiff produce a fitness-for-duty certification despite the fact that defendants were in receipt of prior writings from plaintiff's physician attesting to her need for medical leave and that she would be fit to return to work on March 2, 2007.

36. The following day, March 6, 2007, at plaintiff's request, Dr. Clements wrote an additional fitness-for-duty certification and faxed it to plaintiff at Interview. The document's facsimile was not sufficiently legible, requiring plaintiff to visit her physician's office to personally obtain the original of the fitness-for-duty certification document, which was promptly delivered by plaintiff to defendants on March 15, 2007.

### C. Plaintiff's Second Medical Leave

37. On, or about, March 9, 2007, Dr. Kwon, in consultation with Dr. Clements, determined that due to plaintiff's a deteriorating medical condition and symptoms from it, it was

7

medically advisable for plaintiff to undergo a corrective surgical procedure as soon as possible, prior to the date in May of 2007, originally scheduled by Dr. Kwon on February 16, 2007. Plaintiff's surgery was therefore rescheduled for March 26, 2007.

38. On, or about March 12, 2007, plaintiff informed defendants about her need for the second medical leave by delivering in person to the HR Director a written document from plaintiff's physician, indicating that she would be undergoing the required surgical procedure on March 26, 2007 and that the expected recovery time was estimated to be three months following the surgery.

39. On, or about, March 26, 2007, plaintiff underwent the required surgical procedure, performed by Dr. Kwon, and was discharged from the hospital on March 28, 2007.

### D. *Defendants' Discriminatory and Retaliatory Actions Against Plaintiff*

40. On, or about, March 14, 2007, plaintiff was handed by Mascaro a letter authored by Blasucci and dated March 14, 2007, informing plaintiff that she was being suspended without pay, pending investigation by defendants into alleged illegal and unethical conduct engaged by plaintiff in her capacity as Vice President/Associate Publisher ("Suspension Letter"). The Suspension Letter never identified the basis for the defendants' allegations or the actions taken against plaintiff. Additionally, Blasucci, as an additional pretext to the adverse action taken by defendants against plaintiff cites: "… failure to submit the doctor's certification of your fitness for return to work required by FMLA form…," despite the fact that the form so referenced, as provided by defendants to plaintiff, contains no such requirement.

41. On, or about, March 27, 2007, just one day after her surgery, plaintiff received via courier at her residence a letter authored by Sandra Brant, dated March 27, 2007, informing plaintiff that: "… we have now concluded our investigation referenced in Debbie Blasucci's letter suspending you on March 13th [sic]. Effective immediately, your employment is hereby terminated for Cause in accordance with Section 6.1 of the Employment Agreement between you and Interview, Inc. dated August 15, 2002. Cause includes, but not limited to, your violations of Sections 6.1(a) and (d)… All

employee benefits are canceled effective immediately ..." ("Termination Letter"). The Termination Letter never identified with any specificity the foundational facts supporting the determination that purportedly served as the basis for the defendants' adverse employment actions against plaintiff.

42. At no time prior to commencement of plaintiff's medical leaves have the defendants served upon plaintiff notices required pursuant to the terms of her employment, nor provided plaintiff with adequate time to cure any alleged cause for adverse employment action by defendants against plaintiff.

43. Plaintiff was unlawfully suspended and then summarily terminated from her employment because of her medical disability and for seeking reasonable accommodations for medical leaves associated with her disability.

44. Defendants discriminated against plaintiff because of her medical leaves, and retaliated against her for seeking reasonable accommodation of her disability by, among other things: (a) refusing to pay plaintiff's full compensation to which she is lawfully entitled pursuant to the terms of the Agreement; (b) an intentional campaign designed to undermine and sabotage plaintiff in carrying out her job responsibilities; and (c) suborning plaintiff's authority and marginalizing her management role, in an effort to force her from her employment prior to her unlawful termination by defendants.

45. Upon information and belief, defendants knew, or should have known, that their actions were unlawful and violated plaintiff's rights under 29 U.S.C. §§ 2601 *et. seq.*, New York State Executive Law § 296, *et. seq.* and the New York City Administrative Code § 8-502(a), *et. seq.*

46. Defendants willfully and knowingly conspired, aided and abetted to discriminate and retaliate against plaintiff and to deprive plaintiff of her civil rights.

47. Upon information and belief, defendants acted maliciously and/or in total disregard to plaintiff's civil rights.

## FIRST CAUSE OF ACTION

48. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" to "47" of the complaint with the same force and effect as if fully set forth herein.

49. Defendants failed to reasonably accommodate plaintiff's disability and discriminated and retaliated against plaintiff in the terms and conditions of her employment because of her disability and because of her requests for family medical leave and failed to leave her job open and available for her in violation of the Family Medical Leave Act of 1993 29 U.S.C. §§ 2601 *et. seq.*

50. As a result, plaintiff suffered damages for lost past and future earnings and other employment benefits, in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

51. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" to "47" and "49" of the complaint with the same force and effect as if fully set forth herein.

52. Defendants failed to reasonably accommodate plaintiff's disability and discriminated and retaliated against plaintiff in the terms and conditions of her employment because of her disability and because of her requests for family medical leave and failed to leave her job open and available for her in violation of the New York State Executive Law § 296, *et. seq.*

53. As a result, plaintiff suffered damages for lost past and future earnings, other employment benefits, and emotional injuries, in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

54. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" to "47," "49" and "52" of the complaint with the same force and effect as if fully set forth herein.

55. Defendants failed to reasonably accommodate plaintiff's disability and discriminated and retaliated against plaintiff in the terms and conditions of her employment because of

her disability and because of her requests for family medical leave and failed to leave her job open and available for her in violation of the New York City Administrative Code § 8-502(a), *et. seq.*

56. As a result, plaintiff suffered damages for lost past and future earnings, other employment benefits, and emotional injuries, in an amount to be determined at trial.

**WHEREFORE**, plaintiff demands judgment against defendants as follows:

a) On the First Cause of Action, for damages in an amount to be determined at trial, including but not limited to:

   i) actual damages, pursuant to 29 U.S.C. § 2617(a)(1)(A)(i)(I);

   ii) statutory liquidated damages, pursuant to 29 U.S.C. § 2617(a)(iii); and

   iii) statutory attorney fees, pursuant to 29 U.S.C. § 2617(a)(3);

b) On the Second Cause of Action, for actual damages in an amount to be determined at trial, pursuant to New York State Executive Law § 296, *et. seq.*;

c) On the Third Cause of Action, for actual, and punitive damages in an amount to be determined at trial and attorney's fees pursuant to New York City Administrative Code § 8-502(a), *et. seq.*;

d) Disbursements and other costs; and

e) For such other relief which the Court deems just and proper.

**DEMAND FOR A JURY TRIAL**

Plaintiff hereby demands a trial by jury.

Dated this 15th day of June, 2007

Daniel J. Kaiser, Esq. [DK-9387]
Kaiser Saurborn & Mair, P.C.
20 Exchange Place, 11th Floor
New York, New York 10005
Telephone (212) 338-9100
Fax: (212) 338-9088