# Alan Rich

**From:** Alan Rich
**Sent:** Wednesday, March 10, 2010 11:16 PM
**To:** Cheryl A. Florio (Florioc@adr.org); Linda Hendrickson (Hendricksonl@adr.org)
**Cc:** Peter Shapiro
**Subject:** Fuller - Interview Arbitration - Case No. : 13 116 00418 07 - Discovery issues

Please refer to Arbitrator Ralph S. Berger, Esq.

\*\*\*

Honorable Arbitrator Berger:

This office represents Victoria Fuller as Claimant in the above arbitration. I write to request that you compel compliance with discovery from Respondents in this case. Respondents' counsel have stonewalled Claimant in every regard in this case. Respondents' counsel has repeatedly stalled, ignored or given bad faith responses to our discovery requests and our efforts to resolve outstanding problems.

We have attempted to resolve Respondents' refusal to respond substantively to Claimant's January 5, 2010 "Second Set of Demands for the Production of Documents and Second Set of Requests for Information." In addition, there have been long-standing problems that we have raised on numerous occasions only to get either empty promises or no action at all. They include the near complete unusability of Respondents' 32,521 individual unsearchable image email pdf documents, the failure to provide a written response identifying any documents in responding to Claimant's First or Second discovery requests and a continued failure to provide a privilege log, despite numerous promises to do so dating back to October 2007. We first address the issue of the unresponsiveness to Claimant's January 5, 2010 discovery demands.

## Respondents Stonewall – Provide No Substantive Responses or Documents in Response to Claimant's January 5, 2010 Discovery Demand

On January 5, 2010, we served "Claimant's Second Set of Demands for the Production of Documents and Second Set of Requests for Information," a copy of which is attached here as Exhibit "A."

On February 1, 2010, Peter Shapiro, counsel for Respondents, Interview, Inc., et al., responded with what were effectively little more than objections. Where there was some "response," it was generally a confusing cross-references to other discovery responses. Many of these responses improperly cross-referenced documents and discovery responses *in the federal proceeding* – outside of this arbitration – aside from the fact that they were not responsive to the instant requests. Respondent failed to provide a single document with its February 1, 2010 "Responses and Objections" attached at Exhibit "B."

On February 8, 2010, I wrote Mr. Shapiro an email outlining serious systemic

deficiencies in Respondents' response, a copy of which is attached here at Exhibit "C." We refer you to the issues raised therein as to why Claimant has the right to the requested documents. While we did address some specific issues, a mere glance at Respondents' responses and objections shows that they were perfunctory boilerplate objections and that a specific itemization for each improper response was unnecessary and inappropriate.

Mr. Shapiro wrote a brief email on February 11, 2010 (Exhibit "D"), indicating that there was nothing that he would do regarding the issue of the 32,521 separate unreadable pdf documents and that he would get back to me "next week" regarding the other matters. Having heard nothing, I called the following week and was told that he would respond the week after. No further response has ever been forthcoming.

I respectfully refer you to our arguments as to why certain documents and information is discoverable and/or relevant to Exhibit "C," our February 11, 2010 email.

## CLAIMANT'S DEMANDS REQUEST DISCOVERABLE AND RELEVANT DOCUMENTS AND

## INFORMATION PARTICULARLY SINCE RESPONDENTS' ACTS DEPARTED FROM ORDINARY PROCEDURE

I will also explain generally here. In this case, the Claimant, Victoria Fuller, worked for Respondent, Interview, Inc., for some 13 years. She was always a model employee who rose through the company to the position of Vice-President and Associate Publisher, second only in authority to the Publisher, Sandra Brant, who was also part owner of Interview. Fuller had an exemplary record.

Yet when Mrs. Fuller went out on medical leave on December 2, 2006, Interview began to treat her as it never treated any other employee who took a medical leave. Interview executives isolated her by directing her not to communicate with any Interview staff or clients, including her own assistant. Interview also stopped paying Claimant her commissions which was a significant portion of her compensation package.

When Mrs. Fuller returned from her medical leave, she was locked out of her office, humiliated by a subordinate and told to go "sit in the reception." This was how she was treated where she was second in charge at the magazine at the time she left on medical leave. When Mrs. Fuller protested how she was being poorly treated, Deborah Blasucci, an Inteview executive, responded to Claimant on March 9, 2007, stating, "[n]o one at Brant is preventing you from working or undermining you."

Yet just five days later on March 14, 2007, Blasucci delivered a letter suspending Fuller writing, "[w]e regret to inform you **that in the last several weeks we have received evidence that you have engaged in certain illegal and unethical conduct** in your capacity as Vice President/Associate Publisher. **We have been investigating these matters** and are greatly concerned. Therefore, effective immediately, you are suspended without pay while our investigation continues." [emphasis supplied] Obviously, they had been working feverishly to prevent Claimant from working.

Two weeks later on March 27, 2007, while Mrs. Fuller was again out on medical leave and in NYU Medical Center recuperating from surgery, Sandra Brant, the Publisher, terminated Claimant without any explanation of the facts alleged that caused the termination. Rather, Brant made entirely vague references to the "Cause includ[ing], but is not limited to your violations of Sections 6.1 (a) and (d)."

It was not until May 2008, **well over a year later,** and only as a result of posing Interrogatories in the federal case, that Interview first provided any factual allegations for Fuller's termination for "acts of material fraud, theft and material dishonesty" alleging that she had, *inter alia,* submitted false expense reports which contained "personal" expenses. In 2008, Interview revealed for the first time that in 2007 it fired Fuller for hundreds of dollars worth of allegedly fraudulently submitted taxi and meals receipts *that occurred in 2005 and 2006* -- and these were the allegations against an executive in charge of a $17 million budget at Interview.

The practice regarding expenses at Interview was that if there was any question regarding the submitted expense report, that the company would return it for correction by the employee and give the employee an opportunity to explain and/or resubmit the expense report. This never happened with Mrs. Fuller since all of her reports were accurate and approved when submitted. Though the allegations made in 2007 related to alleged wrongdoing in 2005 and 2006, no one at Interview ***ever*** simply asked Mrs. Fuller to justify or explain the charges even up until the day of her termination. In a complete deviation from its practice, not once did anyone at Interview ask Mrs. Fuller to explain the alleged discrepancies. Rather, had Fuller not posed Interrogatories in 2008 in the federal law suit, Interview never would have revealed the alleged reasons for her termination.

Not only did Fuller submit proper expense reports but when she made a personal charge on the business account, such as use of FedEx or a messenger, Fuller actually reimbursed the company by check. As to what was considered personal vs. business expenses, Mrs. Fuller sought reimbursement for much less than the "business expenses" we believe that other executives charged to the business. Accordingly, we seek documentation relevant to the "business related charges" of certain other employees whose expenses were approved and never disputed to show the company standards that are appropriate in a contract case. Mr. Shapiro refuses those requests. [We also attach a detailed explanation of Mrs. Fuller's claims attached hereto as "Fuller Settlement Letter." This letter was provided to Respondent's counsel when attempts to resolve both the federal action and this arbitration were mediated by U.S. Magistrate Judge Freeman. The letter was intended to provide a comprehensive chronology of events and claims in both the arbitration and federal actions. While the letter is not directed at discovery issues *per se,* in laying out the factual and legal allegations, one can see well the bases for what would constitute discoverable documentation and information.]

We do not think that it merits reviewing the reason for each objection because the objections are boilerplate, even though we are willing to do so. Accordingly, even where we ask for obvious relevant documentation relating to the above issues, Respondent refuses. Respondents' counsel refuses to provide policies and procedures regarding any of the above issues, such as employee expenses, commissions, treatment of employees while on leave, etc. Respondents refuse to provide evaluations of Claimant, expense reports of similarly situated executives (no. 5), expense reports that contained errors that were resubmitted (no. 6), expense reports of Renata Merriam (an employee who was routinely told to resubmit her expense reports after being told the original submission included personal items),

communications regarding checking of expense reports (no. 8), etc.

Interview refuses to even produce the reimbursement checks written by Mrs. Fuller to Interview, reimbursing her for personal use of FedEx and messengers. Clearly, if someone were going to evaluate whether an employee were intentionally stealing from a company, it is entirely relevant to determining the employee's motivation. Showing that the alleged "thief" voluntarily reimbursed her employer for items like personal FedEx usage is among the type of evidence that would be considered.

The expense reports do not show any misdeeds by Mrs. Fuller. Rather, Interview relies largely on claims purportedly made by some of Mrs. Fuller's former assistants *who prepared the very expense reports in question for submission.* Interview now claims that these former assistants, such as Joshua Homer, Marie LaFrance and Nadia Uddin, are thereby witnesses to the falsity of their own submissions made on Mrs. Fuller's behalf. It is Claimant's understanding that some of these former assistants were either rehired by Interview and/or promoted after agreeing to assert these claims of fraud against Mrs. Fuller (*see,* i.e. Requests nos. 10, 11, 24, 27). Were this true, these witnesses would have been promoted for having admitted to participating in a fraud against Interview.

Accordingly, we asked for relevant emails and those of others who actively had involvement in issues relating to Mrs. Fuller's employment, such as David Hamilton, who harassed Mrs. Fuller and also took over her job after she was terminated. Claimant has the right to documents relating to these individuals activities in connection with Mrs. Fuller's employment, as well as potential impeachment or bias related information, such as compensation information. Promotions and compensation increases are particularly relevant where these people first "came forward" in 2007 about frauds which are alleged to have occurred in 2005 and 2006. Mr. Shapiro has refused all such relevant requests.

Interview refuses to respond to various requests directly. For example, in their Response no. 14, they refer Claimant to see "June 2008 Interrogatory Responses no. 2 and 3." However, not only is this January 2009 request entirely different from the June 2008 Interrogatory, but the 2008 Response **was in a different case – the federal case – not in this arbitration.** Such a response is entirely improper.

Though Respondents' counsel agreed to review the issue, the reason for his failure to directly respond to these issues is simple – because there is no excuse for such intentional refusals and attempts to obfuscate. For that reason, we request that you direct complete, full and unevasive responses to this and prior discovery requests.

### **INEXCUSABLE FAILURE TO PROVIDE A PRIVILEGE LOG**

Respondents' counsel have been promising a privilige log since October 24, 2007. *See* Shulte letter at Exhibit "F." The log has been requested orally and in writing numerous times since. Again, by email of January 13, 2010, I requested a log. Mr. Shapiro responded by saying that he wanted to bring it up with the "court," though a log is owed separately in the arbitration, as well as in the federal case. *See* email request at Exhibit "E," containing request and response. While this is in no way binding on the arbitration, I raised the issue during a court conference

7/18/2010

and Mr. Shapiro did not even dispute their obligation to provide same. Rather he agreed to provide it. There has been no litigation in the federal case which excuses Respondents'/Defendants' counsel from that obligation and there is none here. My last "assurance" from Mr. Shapiro was by telephone that I would have the log within about a week, which would have been almost a month ago.

It is now 2 ½ years since the first promise to provide a privilege log. None of Respondents' counsel, including Mr. Shapiro, has never disputed Claimant's right to the log nor their obligation to provide the log. As a practical matter though, by ignoring 2 ½ years of requests and promises, as a practical matter, Respondents' counsel just refuses to do it. We request that you order that the log be provided immediately. Should that not happen, the Answer should be stricken.

## RESPONDENTS FAILED TO PROVIDE ACTUAL *RESPONSIVE* RESPONSES TO BOTH CLAIMANT'S FIRST & SECOND SET OF DISCOVERY REQUESTS

This is another issue counsel ignores from our February 8, 2010 email. Respondents' First Response to Claimant's First Request for Production of Documents and First Set of Interrogatories, attached Exhibit "G," **failed to identify any documents in the response.** Rather, Respondent counsel used the ever vague expression that they "will" provide responsive documents. At the time the response was served, no documents had been provided. Then when the documents were served, the response was not amended to identify what documents were responsive to either the document requests or the interrogatories. This means that we do not know what documents exist that were responsive.

Thereafter, **Respondents served about 34,000 documents,** with some 32,521 unreadable computerized documents and about 1500 paper documents. Respondents' counsel does not identify what exists in response to each request nor which documents are responsive. It is effectively a method of backing up the dump truck and dumping a mountain of discovery that cannot be deciphered.

During the course of defending a motion in federal court, defense counsel stated that they had a team of associates spending hundreds of hours reviewing the documents. Surely, Respondents counsel knows what documents it has and which documents are responsive to the requests **in both the first and second sets of discovery requests.**

Without any such identification, prosecuting this case is turned into a surreal exercise in shooting blind. Respondents' counsel has turned this process into one of obfuscation rather than in making this a *responsive* and meaningful process to enable the parties to ascertain the facts and the truth. Complete responsive answers to Claimant's First Set of Document Requests and Interrogatories should be made as well.

## RESPONDENTS INTENTIONALLY MADE

## ELECTRONIC DISCOVERY UNUSABLE AND UNREADABLE

On numerous occasions, I have requested that Respondents provide me with the electronic discovery documents in a usable form. **Respondents have provided 32,521 separate pdf's of emails in 32,521 unsearchable separate documents.** Not one of these pdf's are searchable. Rather they are in unsearchable "image" format and are so described on the CD-ROM. Since these documents were originally emails, they were originally all searchable in their native format. When searchable documents, like a word-processed document, are converted to a pdf, they naturally retain their searchable format. To be made unsearchable, some other setting or process must be used to convert from a text format to an image format which cannot be searched. In other words, when creating the discs for Claimant's counsel, someone went out of their way to ensure that we could not search these documents. This cannot be permitted.

Additionally, these documents were provided to us as ***32,521 separate files.*** The documents could easily have been compiled into one or more files such as 1-5000, etc. Then, by opening up a single document, one could scroll though hundreds or thousands of pages at a time.

In order to examine these 32,521 documents just once, we have to open 32,521 separate documents. Moreover, as Exhibit "H" shows BRANT ARB 032521, each separate page has been labeled by Respondents' counsel so there is no problem in identifying a given page in a large document of thousands of pages. Mr. Shapiro responds that nothing can be done to rectify this. This is absurd. Respondents reformatted previously readable documents and converted them into unsearchable image documents to ensure that we cannot use a search function to see what the contents are. Then they refused to combine the documents into a manageable format so that we have to open and close 32,521 separate pdf documents.

**Assuming that it took only 20 seconds to open and close each document, it would take 10,840 hours or 1,355 days working 8 hours a day, to look at each document, rather than simply scrolling through one or perhaps 3 or 4 documents which would take *literally years less*.** I have conferred with experts in this area as well as having a good background myself in this area. Any specialist in the area of producing electronic discovery could have easily produced a searchable document in one or more small number of files. It actually took more time and effort to produce the discovery in the virtually unusable way that Respondents counsel has done here.

## CONCLUSION

In conclusion, For the above reasons, we respectfully request that Respondent's counsel be directed to provide complete, direct, clear and non-evasive answers, with all responsive documents to both sets of discovery requests, that they be directed to provide a complete privilege log and to provide the 32,521 documents in a searchable format in either a single file or a small number of files.

Thank you for your kind attention to this matter.

Alan J. Rich, Esq.
**Law Offices of Alan J. Rich, LLC**
26 Court Street, Suite 1801

7/18/2010

Brooklyn, NY  11242
Tel: 212.921.2244
ARich@RichLaw.US

7/18/2010