## Victoria Fuller

| | |
|---|---|
| **From:** | "Victoria Fuller" <vfuller@brantpub.com> |
| **To:** | "'Deborah Blasucci'" <dblasucci@brantpub.com> |
| **Cc:** | <sbrant@brantpub.com>; "'Marie Mascaro'" <mmascaro@brantpub.com>; <vsfuller@nyc.rr.com>; <kaiser@ksmlaw.com> |
| **Sent:** | Tuesday, March 06, 2007 12:06 PM |
| **Subject:** | RE: Our conversation |

Dear Debbie,

I am in receipt of your email dated March 5th, 2007. It is replete with numerous mischaracterizations, inconsistent positions and outright false statements without regard to facts. As evidenced by the content of your email, Brant is continuing its overt efforts to concoct justifications for its deliberate actions that make effective performance of my duties pursuant to terms of the governing Employment Agreement of August 14, 2002 increasingly difficult. Consequently, I am compelled to set the record straight.

The foundational argument put forward by you to rationalize the events that transpired this past Friday, March 2, 2007 rests on "...an awkward and disruptive situation..."
That presumably arose as the result of my supposed "failure" to notify the company that I will be returning to work that day after my medical leave ends. This is manifestly untrue! On February 9th, my husband personally delivered to Marie Mascaro (Brant's Director of Human Resources) medical disability forms completed by my attending physician and me. Marie reviewed them carefully and acknowledged receipt of the same by signing my copy. In section # 7 d. of said document my physician stated unambiguously that: "...claimant will be able to perform usual work on March 2nd ..." Furthermore, in Section # 10 a. I clearly indicated that my disability will end on March 1st. Thus, as of February 9, 2007, Brant was on notice that I would be returning to work on March 2nd, 2007 and was in possession of my doctor's certification that I am able to perform my usual work upon my return.

To the extend that it may have been desirable to inform the staff of my return to work on a given date, it was the responsibility of the Company to take requisite actions, along with making other necessary provisions (i.e. access to my office and work computer).

Your statement:"...I was concerned by your comment that you are still not feeling well. If you are not well enough to perform your job, you should not have returned prematurely..." is patently false. At no time did I communicate to you in any manner that I was not felling well. Please refrain from propagating such fabrications.

Your statement:"...that just prior to your medical leave, on November 21st, Sandy and I met with you to discuss in detail serious concerns about your behavior and job performance. Among the things we discussed were your harassment and bullying of the staff, inappropriate outbursts, etc..." is yet another deliberate mischaracterization. For the record, the aforementioned meeting was called by me to address exclusively with Sandy Brant (to whom I report) the gross insubordination increasingly exhibited by David Hamilton and the unauthorized actions taken by him that were jeopardizing the magazine's advertising revenue. I was perplexed to find you attending that meeting, as I've never dealt with you directly prior to that day on matters related to running day-to-day business activities of my department. During the meeting, you mentioned that I took an extended lunch break to attend to a personal matter and that some of the staff members were complaining about the extended length of several inter-departmental meetings. When I asked you to elaborate on that complaint, you refused to give me any further details. At no time did either Sandy or you bring up the allegations concerning my purported "...harassment and bullying of the staff, etc..." This unsubstantiated allegation was proffered by the company's attorney long after the fact.

As to the entire controversy surrounding my direct subordinate David Hamilton, his continuing and pervasive gross insubordination is evidently supported and encouraged by the Brant's senior executives. Exemplary of that fact is your own statement: "...I asked David Hamilton,...the most senior staff member available, to communicate again that you should wait in reception..." The fact of the matter is that on the morning of March 2, 2007, prior to your arrival, the most senior staff member available on the premises was I, as the Vice President and Associate Publisher, not David Hamilton. It was entirely inappropriate and suborning of my executive authority to have a subordinate of mine, in full view of the staff, insolently issue commands for me to wait in the reception. I had merely instructed David to respect and maintain professional decorum and at not time did I threaten him in any

**P 0095**

10/24/2007

manner or raise my voice. Any statement to the contrary is false.

Despite all that, I nevertheless complied with your request and had to endure the humiliation of waiting for over an hour in the reception, until your assistant, Josh Brenton, informed me that you'd remembered the location of the key to my office – which turned out to be in your office.

Finally, your scurrilous allegations that: "...we determined that you in fact lied to us, and David, demonstrating integrity and resolve, informed us of the accurate facts despite the fact that he feared you would attack him and seek retribution..." is another highly injurious fabrication lacking any basis in fact. Self-serving proclamations of an interested party are hardly dispositive. The only adequate means of determining the truth is to enquire of the actual clients purportedly negatively affected by my alleged misconduct. I am quite prepared to do that. Presumably, the company is prepared to substantiate its allegations of my dishonesty and the specific nature of retaliatory actions taken by me against David Hamilton.

I would be grateful to receive a meaningful response to the specific issues raised above.

Respectfully,

Victoria Fuller

---

**From:** Deborah Blasucci [mailto:dblasucci@brantpub.com]
**Sent:** Monday, March 05, 2007 3:59 PM
**To:** vfuller@brantpub.com
**Cc:** sbrant@brantpub.com; 'Marie Mascaro'
**Subject:** FW:Our conversation

Dear Victoria,

I was very surprised that you returned to work from your almost 3-month medical leave of absence on Friday without any prior notification to me of your decision to return. If you had given me the courtesy of some notice your office would not have been locked, your computer would have been in working order, and the staff would not have been confused with respect to their assignments.

I want to remind you that just prior to your medical leave, on November 21st, Sandy and I met with you to discuss in detail serious concerns about your behavior and job performance. Among the things we discussed were your harassment and bullying of the staff, inappropriate outbursts, etc. We never had an opportunity to further address those issues because you almost immediately went out on your medical leave. Your inappropriate behavior during your one day back at work highlights that these are still serious issues of continued concern.

After you went on medical leave your first set of attorneys wrote to accuse Brant of conspiring to force you to quit. As you know, your second set of attorneys have filed a demand for arbitration in which they incredibly claim on your behalf that Brant terminated your employment! The filing also accuses us of initiating "an intentional campaign to undermine and sabotage" you in carrying out your job responsibilities, usurp your authority and marginalize your role, with the intention to force you to resign, etc. Nothing could be further from the truth! Both sets of your attorneys accuse Brant of taking David's side over yours as evidence of our so-called plot. As we replied through our counsel, we determined that you in fact lied to us, and David, demonstrating integrity and resolve, informed us of the accurate facts despite the fact that he feared you would attack him and seek retribution. David's whistle blowing was an act of courage and we believe your attempts to retaliate against him are unethical and illegal.

**P 0096**

10/24/2007

Which leads me to your email to me from Friday. I investigated your allegations and have concluded that they are false. David did not shout at you "across the entire office ... in front of staff" and did not order you to sit in the reception area. I asked David to ask you to wait in reception while I was driving to the office. My investigation concludes that when David entered the office, he saw you in front of Marie LaFrance's desk. From a short distance away, next to Adrien's desk, he said, "Victoria, I believe Debbie Blasucci has asked you to wait at reception until she arrives at the office." He did not raise his voice and made no further comment.

I am particularly concerned that, a moment later, you shouted angrily across the office to David, who had by then arrived at his desk: "David, you're not my boss. You'd better watch out for yourself." David notified me on Friday that he had been threatened by you when he carried out the instructions that came from me. Because you raised your voice, other staff overheard your threatening speech. In this instance, your behavior puts the company at serious risk.

Your failure to provide proper notice of your return on Friday had other serious negative ramifications.

No one in the office at the time of your arrival had access to the key to your office door. Consequently, you were left standing in the hallway and I was left trying to manage the situation while caught in heavy traffic related to severe weather and flooding.

The hard drive in the computer in your office had crashed; if we had been expecting you on Friday, it would have been brought into working order and ready for your use.

When you saw Marie LaFrance, you said that you were surprised that no one had told her that this was your first day back at work. You intentionally misled Marie LaFrance, and created the impression in her mind that the Company had failed to communicate a vitally important piece of information as it relates to her job. She was taken aback and angry, and your disingenuousness created yet another management problem for me.

The department staff had not been given any update on your expected return date since you had not given such to the company, and therefore they were understandably surprised to see you. Elliot Coakley was particularly unsettled because he started with the company after your medical leave began, and you asked him for a copy of his resume. You saw his resume when you interviewed him and, of course, the Company has a copy of it on file should you need to see it again, but Elliot was left wondering if his job was suddenly in jeopardy. Again, your unpredictable behavior created another management problem for the company.

In my judgment, the best immediate solution to the awkward situation you had created was to ask you to wait in the reception area until I arrived at the office, and you agreed when you called me on my cell phone. However, the staff informed me that you were not waiting at reception, and I found it frustrating that you refused to comply with this simple request. That is why I asked David Hamilton, who was about to arrive at the office and the most senior staff member available, to communicate again that you should wait in reception.

Obviously, it would have been in the best interest of both you and the Company if you had provided notice that you intended to return to work on Friday. We acted as quickly as we could, under the circumstances, to get you into your office and get your computer working. We would certainly have had a workplace ready for you, and we would have informed your assistant and the rest of the department staff to expect you. Your refusal to follow my instructions exacerbated the already difficult situation that you had caused.

**P 0097**

10/24/2007

In one day in the office, you demonstrated the following behavior:

- You refused to comply with my direction to wait for me in the reception area.

- You created a number of employee management problems by failing to give us notice of your return date. Such notice would have allowed us to disseminate timely information to our staff and avert an awkward and disruptive situation.

- You misled Marie LaFrance by implying that the company knew that you were expected that day.

- You threatened an employee who has a reporting relationship to you and who has previously complained about your bullying behavior.

As stated in November, we will not tolerate abuse by you of our employees, nor will be tolerate lies and dishonesty.

Finally, I was concerned by your comment that you are still not feeling well. If you are not well enough to perform your job, you should not have returned prematurely. In addition, you were advised on the Family and Medical Leave Act form given to you that you would be required to present a fitness-for-duty certificate prior to being restored to employment (see item # 6 of the form). The form notes that if the certification is not received, "your return to work may be delayed until certification is provided." Prior to your return we had expected notice from you and a certification from your doctor. We received neither, but permitted you to return on Friday. We still expect a certification from your doctor, particularly in light of your comment that you still do not feel well.

Deborah Blasucci
Executive Vice President / CFO
Brant Publications, Inc.
*INTERVIEW, Art in America, The Magazine ANTIQUES*
575 Broadway, 5th Floor
New York, NY 10012
212–941–2880 / 212–941–2815 (fax)

P 0098

10/24/2007